ASH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Jamaluddin Masoom,

Petitioner,

v.

John Cantu, et al.,

Respondents.

No.    CV-26-00218-PHX-SHD (CDB)

**ORDER**

On January 14, 2026, Petitioner filed a Petition under 28 U.S.C. § 2241 for a Writ of Habeas Corpus seeking release from immigration detention (Doc. 1), and a Motion for Temporary Restraining Order.  By Order dated January 15, 2026, the Court denied the Motion for Temporary Restraining Order, but ordered Respondents to Show Cause for why the Petition should not be granted.  (Doc. 5).  The Petition is now fully briefed.  (Docs. 8, 9).  For the reasons that follow, the Court will grant the Petition and order that Petitioner be immediately released from custody.

**I.    Background**

Petitioner is a citizen of Afghanistan who entered the United States as an evacuee in August 2021.  (Doc. 1 at 2; Doc. 8-1 ¶ 5).  Petitioner was admitted into the United States pursuant to Operation Allies Refuge; Petitioner's authorization to remain in the United States was good through August 28, 2025.  (Doc. 1 at 2; Doc. 8-1 ¶ 5).  On August 8, 2022, Petitioner applied for asylum, but, on January 18, 2024, it was denied.  (Doc. 1 at 2; Doc. 8-1 ¶¶ 6–7).

On April 1, 2025, Petitioner was taken into custody by ICE and removal proceedings were initiated against him. (Doc. 1 at 3; Doc. 8-1 ¶ 8). On September 5, 2025, an immigration judge ("IJ") ordered Petitioner be removed to Afghanistan, but granted deferral of removal pursuant to the Convention Against Torture ("CAT"). (Doc. 1 at 3; Doc. 8-1 ¶ 16; *see also* Doc. 1-1 at 16–25). On October 1, 2025, DHS timely filed an appeal against the portion of the IJ's order granting deferral of removal; DHS did not, apparently, appeal against the portion of the IJ's order that Petitioner be removed from the United States to Afghanistan. (Doc. 8-1 ¶ 17; *see also* Doc. 1 at 4 n.1) (Petitioner "did not challenge the final order of removal entered by the immigration judge, and it is not being challenged by DHS"). That appeal remains pending as of the date of this Order, and Petitioner remains in ICE custody.

## II.    Basis for Continued Detention

The parties disagree on the statutory basis for Petitioner's continued detention. There is no question that a removal order has been entered against Petitioner. (*See* Doc. 1-1 at 16–24). Petitioner contends that because DHS appealed only the grant of deferral of removal—and not the underlying removal order—the removal order is final, and his continued detention is governed by 8 U.S.C. § 1231(a). Respondents, however, assert that because the IJ's ruling contained both the removal order and the grant of deferral of removal, their appeal of any part of the ruling renders the *entire* ruling *not* final. They therefore maintain that Petitioner's continued detention is governed by 8 U.S.C. § 1225(b).

Section 1231(a) requires detention during the first 90 days following a removal order. After that period, detention is discretionary, but it may not be authorized once removal is no longer reasonably foreseeable. *Zadvydas v. Davis*, 533 U.S. 678, 699–701 (2001). In contrast, continued detention is mandatory under § 1225(b). Accordingly, determining which statute governs Petitioner's continued detention is a threshold question in assessing the merits of his claims for relief.

Citing *Nasrallah v. Barr*, 590 U.S. 573 (2020), *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021), and *Riley v. Bondi*, 606 U.S. 259 (2025), Respondents assert that

"Petitioner's removal order will not be final until the Board of Immigration Appeals ('BIA') disposes of the government's administrative appeal," and that his continued detention is thus required by § 1225(b).  (Doc. 8 at 2, 6).  None of these cases support Respondents' contention.  Indeed, Respondents themselves state that,

> In *Nasrallah v. Barr*, the Supreme Court held that CAT relief *does not* merge into a final order of removal . . . , and concluded that the term *final orders of removal* for purposes of 8 U.S.C. § 1252 encompasses only the rulings made by the immigration judge or Board of Immigration Appeals that affect *the validity of the final order of removal*.

(*Id.* at 3–4) (cleaned up) (*emphasis added*; *emphasis in original*).  The Supreme Court further made clear in *Nasrallah* that a "CAT order is not itself a final order of removal" and "does not disturb the final order of removal."  590 U.S. at 582.

> Similarly, Respondents state that,

> In *Johnson v. Guzman Chavez*, the Supreme Court considered whether Section 1226 or Section 1231 governed the detention of aliens who were ordered removed, but applied for relief from removal separately, in a so-called withholding-only proceeding.  In that case, the petitioners were ordered removed, successfully removed, and then reentered the United States without authorization.  The petitioners were granted hearings that focused exclusively on whether they were eligible for withholding of removal under CAT.  The Court held that reinstated removal orders were administratively final and had been for years, and that the withholding-only proceedings *did not affect that status*.

(Doc. 8 at 4) (cleaned up) (*emphasis added*).

Additionally, addressing a functionally identical question to that presented here—and relying on *Nasrallah*—the Supreme Court in *Guzman Chavez* found that the government's argument "that a removal order does not become 'administratively final' until the withholding-only proceedings conclude . . . ignores that removal orders and withholding-only proceedings address two distinct questions and end in two separate orders."  594 U.S. at 524.  As such, the Supreme Court concluded that "[b]ecause the validity of removal orders is not affected by the grant of withholding-only relief, an alien's initiation of withholding-only proceedings does not render non-final an otherwise administratively final reinstated order of removal."  *Id.* (quotation marks omitted).

Finally, with regard to *Riley*, Respondents state that

> the petitioner [in *Riley*] was ordered removed by an immigration officer under the expedited removal process . . . [but] claimed a fear of persecution if he were returned to his home country, and he sought review of this claim in a withholding-only proceeding before an immigration judge. The immigration judge granted deferral of removal under CAT. The government appealed the decision to the BIA, which reversed the immigration judge's grant of CAT relief. Petitioner filed a petition for review within thirty days of the BIA's decision, but more than thirty days after the immigration officer ordered the petitioner removed. The Court determined that, for purposes of Section 1251(b)(1), the petitioner's petition for review was untimely, because the immigration officer's order was the order which directed removal."

(Doc. 8 at 4–5) (cleaned up). Relying on *Nasrallah* and *Guzman Chavez*, the Supreme Court in *Riley* again made clear that while "review of the denial of CAT relief cannot take place until the BIA has denied such relief," this "does not mean, however, that an order denying CAT relief is the final order of removal . . . or that a previously issued removal order remains non-final until CAT relief is denied." 606 U.S. at 271.

Respondents argue, "[n]one of these cases squarely address the situation at bar," namely "whether an appeal of a single order stays the entire order if the only *issue* appealed is CAT relief." (Doc. 8 at 5). This both overly narrows "the situation at bar," and misconstrues the IJ's September 5, 2025 ruling. The clear through-line of *Nasrallah*, *Guzman Chavez*, and *Riley* is that "orders of removal" and "deferral of removal" are distinct and separate orders, regardless of whether they may be contained within the same document. Further, the IJ's September 5, 2025 ruling is not itself, as Respondents construe it, "a single order." (*Id.* at 5). Rather, it is—as it is titled—the "Decision of the Immigration Judge." (*See* Doc. 1-1 at 18). Therein, that Decision contained *four* distinct orders, as follows:

> IT IS HEREBY ORDERED that Respondent's application for asylum be DENIED.
>
> IT IS FURTHER ORDERED that Respondent be ordered removed to AFGHANISTAN.
>
> IT IS FURTHER ORDERED that Respondent's applications for withholding of removal under the INA and the Convention Against Torture be DENIED.

- 4 -

IT IS FURTHER ORDERED that Respondent's application for deferral of removal under the Convention Against Torture be GRANTED.

(*Id.* at 24).  Respondents' argument thus relies on a faulty premise.  Properly read, and in light of *Nasrallah*, *Guzman Chavez*, and *Riley*, the IJ's September 5, 2025 Decision contained *multiple* orders, only one of which (the grant of deferral pursuant to the CAT) has been appealed.  Because the IJ's *order of removal*—as distinct from the grant of deferral pursuant to the CAT—has not been appealed, it is final, and Petitioner's continued detention must be pursuant to 8 U.S.C. § 1231(a).

## III.   8 U.S.C. § 1231(a)

Under § 1231(a)(1), the Government has 90 days in which to remove an alien once a removal order becomes final.  Detention during this removal period is mandatory.  8 U.S.C. § 1231(a)(2).  If the Government is unable to effect removal within the 90-day removal period, however, continued detention of aliens such as Petitioner becomes discretionary.  8 U.S.C. § 1231(a)(6).  That discretion, however, is not unfettered, and indefinite detention is not permitted.  *Zadvydas*, 533 U.S. at 689 (8 U.S.C. § 1231(a)(6) "does not permit indefinite detention").  This is not to say that every alien like Petitioner must be released once the 90-day removal period has expired.  *Id.* at 701.  Rather, the Supreme Court in *Zadvydas* recognized an implicit post-§ 1231(a)(2) period in which continued detention is "presumptively reasonable" and does not violate the Fifth Amendment.  *Id.*  The *Zadvydas* Court concluded that this "presumptively reasonable" period extends for no more than 6-months once an order of removal becomes final (including the 90-day mandatory detention period under § 1231(a)(2)).  *Id.*  Thereafter, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.*  If, after considering the evidence, the Court finds that "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."  *Id.* at 699.

## IV.   Discussion

As noted, Petitioner's removal order was issued on September 5, 2025, and became final 30 days later when neither party appealed it. 8 C.F.R. § 1241.1. As such, as of today's date, Petitioner's detention has exceeded the § 1231(a) mandatory detention period, but has not yet exceeded the six-month *Zadvydas* "presumptively reasonable" period. In its Response, the government interprets *Zadvydas* as creating a brightline rule that an alien detained pursuant to § 1231(a)(6) cannot bring a constitutional challenge to the duration of his detention unless and until more than six months have elapsed since the entry of the removal order. Respondents thus argue that Petitioner's challenge is premature given that his removal order was issued less than six months ago. (Doc. 8 at 11) ("Petitioner's petition was filed on January 14, 2026—barely three months [after the September 5, 2025 removal order]. If Petitioner claims relief under *Zadvydas*, he has done so prematurely, and he must wait until he has been detained six months before he can state a claim for indefinite detention.").

The Court does not share this interpretation of *Zadvydas*. The "presumptively reasonable" period in *Zadvydas* is, as its plain language makes clear, a *presumption*, and nothing in *Zadvydas*—or any other controlling authority, as far as the Court is aware— provides that this presumption is irrebuttable. The Supreme Court has suggested as much, stating in *Clark v. Martinez*,

> We also reject the Government's argument that, under *Zadvydas*, § 1231(a)(6) authorizes detention until it approaches constitutional limits. The Government provides no citation to support that description of the case—and none exists. *Zadvydas* did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, *since* interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal. If we were, as the Government seems to believe, free to 'interpret' statutes as becoming inoperative when they 'approach constitutional limits,' we would be able to spare ourselves the necessity of ever finding a statute unconstitutional as applied.

543 U.S. 371, 384 (2005) (cleaned up). Indeed, *Zadvydas* itself confirms that the presumption is rebuttable. In *Zadvydas*, the Supreme Court recognized that it had "adopted

similar presumptions in other contexts to guide lower court determinations," 533 U.S. at 701, citing in part *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991), which provided for a rebuttable presumption that 48-hours detention before a probable cause hearing was reasonable. *See* 500 U.S. at 56 ("This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nevertheless violate *Gerstein* [*v. Pugh*, 420 U.S. 103 (1975)] if the arrested individual can prove that his or her probable cause determination was delayed unreasonably."). As such, given the Supreme Court's equation of the "presumptively reasonable" period in *Zadvydas* with the rebuttable presumption in *County of Riverside*, it does not appear that the *Zadvydas* Court intended to foreclose relief—even where continued detention was clearly unconstitutional—so long as such detention did not exceed six months. Put another way, if a particular detention is unconstitutional, then it is unconstitutional no matter how long it has lasted.

While Respondents cite several cases with language that could be interpreted to the contrary (*see* Doc. 8 at 10–11), the Court does not find this language persuasive. Most notably, it does not appear that any of the cases cited by Respondents squarely address this issue, but merely regurgitate—often citing each other—language that could be read to suggest the six-month period has a preclusive effect without actually addressing that question itself. As such, the language in these cases is, at best, dicta, and does not support the conclusion suggested by Respondents.

Of the cases that *have* addressed this issue, many courts have concluded that an alien detained pursuant to § 1231(a)(6) may bring a constitutional challenge to the duration of his confinement even if the period of confinement has not yet reached the six-month mark. *See* Order on Petitioner's Motion for Temporary Restraining Order at 2, *Sweid v. Cantu*, No. 2:25-cv-03590-DWL-CDB (D. Ariz. 2025) Dkt. No. 9 (Respondents' suggested interpretation "is difficult to reconcile with *Zadvydas*'s clarification that it was simply establishing a presumption that detention not exceeding six months is constitutional. *Zadvydas* did not hold that this presumption is conclusive in all cases and under all sets of

facts—a point the Supreme Court emphasized in a subsequent case" (citing *Clark*, 543 U.S. at 384)); *Zavvar v. Scott*, 2025 WL 2592543, *6 (D. Md. 2025) ("The Court therefore finds that the fact that Zavvar has not yet been detained for six months does not preclude his argument that his detention is unlawful, both because the six-month presumption does not necessarily control in cases in which the petitioner was not subject to continuous detention from the issuance of the removal order, and because the six-month presumption is rebuttable."); *Medina v. Noem*, 794 F. Supp. 3d 365, 375 (D. Md. 2025) ("[W]hat *Zadvydas* did make clear was that it was adopting a presumption—not a conclusive bar to adjudication of whether continued detention is authorized that lifts only after six months have elapsed."); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 396 (D.N.J. 2025) ("Although some courts have read *Zadvydas* as creating a bright-line rule—one that effectively allows the government to detain a person for at least six months without judicial review, even if there was no possibility of removal—a close reading of *Zadvydas* does not support that interpretation."); *Ali v. Dep't of Homeland Security*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits."); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018) ("The six-month *Zadvydas* presumption is just that—a presumption.  The Supreme Court in *Zadvydas* outlined a guide for approaching these detention challenges, not a prohibition on claims challenging detention less than six months." (cleaned up)); *Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wisc. 2008) ("Nothing about this scheme supports the conclusion drawn by many courts that the presumptive legality of detention within the first six months is irrebuttable. The *Zadvydas* Court did not say that the presumption is irrebuttable, and there is nothing inherent in the operation of the presumption itself that requires it to be irrebuttable.").  The Court agrees with these reasoned decisions.[1]

---

[1] The Court acknowledges that several Ninth Circuit cases contain passages that could be construed as suggesting that a *Zadvydas* claim may only be brought after the six-month mark.  *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) (*Zadvydas* "held that after a presumptively reasonable six-month period of post-removal

However, even though Petitioner is not foreclosed from bringing a *Zadvydas* claim under these circumstances, the fact his detention has not yet exceeded the six-month mark means he faces a much heavier burden:

> Within the six-month window, the *detainee* must *prove* the unreasonableness of detention, and courts must accord great deference to Executive Branch determinations based on foreign policy expertise and administrative necessity. After the expiration of six months, the detainee need only offer a valid reason why removal is unforeseeable, which the *government* must then *disprove*. And as time passes, the burden on the government increases accordingly.

*Cesar*, 542 F. Supp. 2d at 903 (citing *Zadvydas*, 533 U.S. at 701).

Even under this heightened standard, however, the Court concludes that Petitioner has satisfied his burden. The record is clear that Petitioner has been granted deferral of removal to Afghanistan pursuant to the CAT. As such, the only possibility for Petitioner's removal is to a third country. Respondents avow, however, that all efforts to effect Petitioner's removal have been "paused pending the outcome of the DHS appeal." (Doc. 8-1 ¶ 21). Further, as Petitioner notes, the filing of the appeal by DHS of the IJ's Decision triggered an automatic stay of removal. *See* 8 C.F.R. § 1003.6(a) (providing "the decision in any proceeding under this chapter from which an appeal to the Board may be taken shall not be executed during the time allowed for the filing of an appeal unless a waiver of the

---

period detention, the alien was entitled to release if he successfully demonstrated that there was good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future" (quotation marks omitted)); *Arango Marquez v. I.N.S.*, 346 F.3d 892, 898–99 (9th Cir. 2003) ("Section 1231(a)(6) does not authorize indefinite post-removal period detention, but instead imposes an implied six-month limit on such detention, provided that removal is not reasonably foreseeable."); *Xi v. U.S. I.N.S.*, 298 F.3d 832, 840 (9th Cir. 2002) ("Having spent considerably more than six months in detention, Lin is entitled to make a showing in federal court that his removal to China is not reasonably foreseeable."). As with Respondents' cited cases, however, none of these decisions squarely address whether the "presumptively reasonable" *Zadvydas* period is rebuttable, and the Court thus does not view those passages as constituting binding circuit law on this issue, even under the Ninth Circuit's broad conception of what constitutes binding circuit law. *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019) ("Where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense. In other words, well-reasoned dicta is the law of the circuit . . . ." (cleaned up)).

right to appeal is filed, nor shall such decision be executed while an appeal is pending or while a case is before the Board by way of certification"). As such, there is no possibility of removal while the appeal of the IJ's Decision remains pending before the BIA. As Petitioner notes, and in the Court's experience, such appeals often take a year or more to conclude. The Court thus finds that Petitioner's continued detention during this period— despite no possibility of removal—to be unreasonable. *Cesar*, 542 F. Supp. 2d at 903; *see also* Doc. 1-1 at 35–38 (prior ICE Memoranda directing that "noncitizens granted asylum, withholding of removal, or CAT protection by an immigration judge should be released pending the outcome of any DHS appeal of that decision").[2] There is no likelihood—let alone significant likelihood—that Petitioner will be removed in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. Accordingly, the Court will grant the Petition, and order that Petitioner be immediately released from custody under the same conditions as existed prior to his April 1, 2025 detention.

**IT IS ORDERED:**

(1)    The Petition for Writ of Habeas Corpus (Doc. 1) is **granted**.

(2)    Respondents must **IMMEDIATELY RELEASE** Petitioner from custody under the same conditions that existed before his current detention.

(3)    No more than **48 HOURS** from the time of this Order, Respondents must file a notice of compliance.

(4)    The Clerk of Court must enter judgment accordingly, and close this case.

Dated this 26th day of February, 2026.

Honorable Sharad H. Desai
United States District Judge

---

[2] While these Memoranda—dated June 7, 2021, March 6, 2012, February 9, 2004, and April 21, 2000, respectively—are not binding authority (and have likely been revised more recently), they support the conclusion that for nearly 25 years it has been the policy of DHS to release detainees in Petitioner's position. Absent argument to the contrary, the Court finds this longstanding policy persuasive evidence supporting Petitioner's release.

- 10 -